IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT NEAL, JR.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　1:15CV126
　　v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
OFFICER BERKLEY WILLIAMS,　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　　)

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Officer Berkley Williams' motion for summary judgment. (Docket Entry 19.) Plaintiff Robert Neal, Jr. (hereinafter "Plaintiff" or "Mr. Neal") has not responded to the motion. The matter is ripe for disposition. For the reasons stated herein, the Court recommends that Defendant's motion for summary judgment be granted.

### I. Background

Plaintiff filed this action against Defendant on February 2, 2015, claiming use of excessive force during Plaintiff's encounter with Defendant in October 2013. (*See generally* Complaint, Docket Entry 2.) Plaintiff alleges that on October 3, 2013, he was stopped by Defendant, a Reidsville police officer, while operating a dirt bike on a public roadway. (*Id.* at 3.) Next, Plaintiff asserts that he was placed under arrest and taken to the police station by Defendant. (*Id.*) Once reaching the police station, Plaintiff and Defendant had "disagreeable words." (*Id.*) Defendant allegedly then threw Plaintiff on to a bench inside a holding cell, causing injury to Plaintiff's knees and arms. (*Id.*) Plaintiff was transported to a hospital where

he continued to argue with Defendant. (*Id.*) Plaintiff alleges that Defendant took off the handcuffs in order to provoke Plaintiff into striking Defendant. (*Id.*) The arguing continued until another officer stepped between Plaintiff and Defendant, and restrained Defendant. (*Id.*) The next day a lieutenant officer came to Plaintiff's residence to take pictures of his injuries, and forced Plaintiff to sign a document stating that no one in the sheriff's department caused his injuries. (*Id.*)

Plaintiff has also attached to his complaint a letter from the Reidsville Police Department. (*See* Letter, Docket Entry 2 at 5.) This appears to be the result of an internal investigation conducted surrounding the alleged events during the arrest. Police Chief Charlie Dennis indicated that "there [was] no evidence to substantiate [Plaintiff's] allegations that Officer Williams used excessive force while [Plaintiff was] being processed. (*Id.*) The letter further stated that Defendant Williams did make "inappropriate comments and removed the handcuffs from [Plaintiff's] wrist." (*Id.*) According to Chief Dennis, those violations have been handled. (*Id.*)

Defendants' summary judgment materials include the affidavit of Defendant Williams and Reidsville Police Officer Cody Westmoreland. (Williams Aff., Docket Entry 22; Westmoreland Aff., Docket Entry 21.) Officer Westmoreland reported that while patrolling, he observed Plaintiff driving a dirt bike on a public roadway without a helmet. (Westmoreland Aff. ¶ 1.) Officer Westmoreland then executed a motor vehicle stop on Plaintiff and smelled a strong odor of alcohol. (*Id.*) Defendant was called to perform a horizontal gaze nystagmus (HGN) test, but upon his arrival, Plaintiff was not cooperating. (*Id.* ¶ 2; *see also* Williams Aff. ¶ 2.) Upon administering the HGN test, Plaintiff was unable to follow the tip of Defendant's

2

pen with his eyes. (Williams Aff. ¶ 2.) Additionally, Plaintiff could not, or refused, to blow into the Alco censor. (Westmoreland Aff. ¶ 2.) Eventually Plaintiff cooperated with the Alco censor, and his readings were a .19 and .18, which were above the legal limit in North Carolina of .08. (Williams Aff. ¶ 2.)

Plaintiff was subsequently arrested and transported to Reidsville Police Department. (Westmoreland Aff. ¶ 2.) Officer Westmoreland stated that once Plaintiff was placed in the holding cell, he became "verbally combative" and began kicking at the bars of the holding cell in the police department. (Id.) In fear that Plaintiff would injure himself or damage the holding cell, Plaintiff was instructed to stop his conduct. (Id. ¶ 3.) Upon Plaintiff's refusal to stop kicking the holding cell, officers decided to place leg irons on Plaintiff. (Westmoreland Aff. ¶ 3; Williams Aff. ¶ 4.) Defendant ordered that Plaintiff kneel on a wooden bench to place the leg restraints on Plaintiff and he refused. (Westmoreland Aff. ¶ 3.) Defendant then stood Plaintiff up facing the wooden bench and Defendant pushed against the back of Plaintiff's knees to gain compliance. (Williams Aff. ¶ 4.) Defendant and Officer Westmoreland then placed the leg irons on Plaintiff in order to restrain him. (Id.) Defendant asserts that he used no other force to restrain Plaintiff, and did not hit or strike Plaintiff in any manner. (Williams Aff. ¶ 5.) Officer Westmoreland confers that at no point did he witness Defendant strike Plaintiff. (Westmoreland Aff. ¶ 4.)

Subsequently, a search warrant was obtained in order to draw Plaintiff's blood at Annie Penn Hospital. (Williams Aff. ¶ 6.) Upon arriving at the hospital, Plaintiff continued to be verbally combative, but no physical force was used. (Id. ¶¶ 6-7.) Plaintiff was later convicted

3

of driving while intoxicated ("DWI") and is now serving his sentence in the North Carolina Department of Corrections. (Westmoreland Aff. ¶ 7.)

**II. Standard of Review**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## III. Analysis

### A. Excessive Force

Defendant moves for summary judgment as to Plaintiff's § 1983 claim for use of excessive force. (Def.'s Br., Docket Entry 20.) Plaintiff has not responded to the motion for summary judgment. Defendant argues that summary judgment should be granted in his favor because: (1) there are no genuine issues of material fact; (2) Defendant is entitled to qualified immunity; and (3) Plaintiff has not presented a claim or evidence of municipal liability. (*Id.*)

The Court first notes that because Plaintiff failed to file a response to Defendants' summary judgment motion within the time required by this Court's Local Rules, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. R. 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6–8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). Alternatively, Defendant's motion should be granted on the merits.

Defendant first argues that Plaintiff was not subjected to excessive force, and that enough force was used to subdue Plaintiff because of his noncompliance. (Def.'s Br., Docket Entry 20 at 5.) Excessive force of a pretrial detainee is governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction "the use of excessive force that amounts to punishment." *Sawyer v. Asbury*, 537 Fed. Appx. 283, 290 (4th Cir. 2013) (citation omitted). Courts employ an objective reasonableness standard to analyze excessive force claims under the Fourteenth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)

(concluding that "the appropriate standard for [assessing] a pretrial detainee's excessive force claim is solely an objective one"). "Under this standard, the officer's 'underlying intent or motivation' is irrelevant; rather the focus is on 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.'" *Oliver v. Baity*, 208 F. Supp. 3d 681, 695 (M.D.N.C. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001)); *see also Kingsley*, 135 S. Ct. at 2466 (finding that a court must determine objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight"). The following factors are considered to determine the reasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473.

Here considering the evidence before the Court, Defendant's conduct was objectively reasonable under the circumstances. First, during his initial contact with Defendant, Plaintiff appeared highly intoxicated and was arrested for a DWI. (Westmoreland Aff. ¶ 2.) Second, while at the police department, Plaintiff did not comply with the officers' request to refrain from striking the holding cell bars, so Defendant pushed behind the knees of Plaintiff to get him in a kneeling position to secure the leg restraints on Plaintiff. (Williams Aff. ¶ 4.) The need for some force was evident by Plaintiff's conduct. *Grisson v. City of Fayetteville*, 5:14-CV-272-BO, 2015 WL 5797661, at *6 (E.D.N.C. Oct. 2, 2015) (unpublished). Moreover, the

amount of force used was minimal and just enough to properly place leg restraints upon Plaintiff. Defendant and Officer Westmoreland recognized the danger of Plaintiff hurting himself and/or damaging the holding cell. (Westmoreland Aff. ¶ 3.) Plaintiff was actively resisting the officers' verbal commands to cease kicking the cell which did create security concerns. (*Id.*) Plaintiff alleges injuries to his arms and knees which Defendant asserts was not the result of his actions. (Docket Entry 2 at 3.) Even if Plaintiff's allegations were true, the extent of his injuries alleged are only one consideration and the injuries alleged are not significant. Plaintiff does not assert that he had to seek medical treatment for the bruising and bleeding. In sum, Defendant's actions were objectively reasonable under the circumstances. *Grisson*, 2015 WL 5797661, at *6.

### B. Qualified Immunity

Next, Defendant argues that he is shielded by qualified immunity. (Docket Entry 20 at 7.) "The doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations for reasonable mistakes as to the legality of their actions." *Sawyer*, 537 Fed. Appx. at 295 (citations omitted). Further, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: (1) whether the official violated a constitutional right;

and if so, (2) whether the right was "clearly established" at the time of its violation. *See e.g.*, *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court determines whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). Here, having found Defendant's conduct to be objectively reasonable under the circumstances, no constitutional right has been violated. *Gregg v. Ham*, 678 F.3d 333, 339 n.7 (4th Cir. 2012) ("To prevail under qualified immunity, [Defendant] has to show either that there was no constitutional violation or that the right violated was not clearly established."). Thus, Defendant is entitled to qualified immunity.

### C. Municipal Liability

To the extent Plaintiff's claim seeks municipal liability, it also fails. In order to establish municipal liability, Plaintiff must show: (1) the injury was caused by a constitutional violation, and (2) the municipality is responsible for that violation. *Wilkerson v. Thrift*, 124 F. Supp. 2d 322, 339-40 (W.D.N.C. 2000). A municipality is responsible only when the execution of the government's policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[M]unicipal liability under § 1983 may not be predicated solely upon a respondeat superior theory. Liability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or

8

custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694). Policies and customs for which municipal liability may arise are:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted). In the instant case, the evidence is devoid of the existence of any policies or customs upon which municipal liability could be based. Thus, summary judgment should be granted in favor of Defendant.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 19) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

May 3, 2017
Durham, North Carolina